Settle order on notice.

---

## LEWIS v. BLACKWOOD.

(Supreme· Court, Appellate Division, First Department. November 8, 1912.)

1. EVIDENCE (§ 456[*])—EXTRINSIC EVIDENCE AFFECTING WRITINGS—"REGULAR ENGAGEMENT."

    A manager of a theater wired a theatrical agency to offer plaintiff a regular engagement, commencing the first week in July, to which the

---

[*]For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agency replied that plaintiff could come until September 1st. The manager then wired the agency that he could not consider plaintiff for the summer only, but would give $100 a week until September, and $125 after that date, which offer was accepted. *Held*, that the telegrams themselves showed that the engagement was at least for some definite period extending beyond the summer, and justified evidence that in the theatrical business the words "regular engagement" had a definite meaning, and as applied to an engagement in a threater which ran throughout the year meant an engagement for 52 weeks.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2105, 2106; Dec. Dig. § 456.*]

2. PRINCIPAL AND AGENT (§ 177*)—KNOWLEDGE OF AGENT—IMPUTING TO PRINCIPAL.

Where the manager of a corporation in his own name wired a theatrical agency to offer plaintiff a regular engagement, which was done, and the contract completed, in an action on the contract, evidence that six months before the making of the contract the agency was informed that such manager was acting for the corporation was inadmissible to charge the actor with notice that such manager was acting as agent for a disclosed principal, since he was not chargeable with the knowledge of the agency acquired at a different time and wholly unconnected with its agency for him, especially as the agency merely acted as a go-between or agent of both parties.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

Appeal from Trial Term, New York County.

Action by N. Sheldon Lewis against John H. Blackwood. From a judgment dismissing the complaint at the close of plaintiff's case, he appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

John H. Hazelton, of New York City, for appellant.
Nathan Burkan, of New York City, for respondent.

MILLER, J. This is an action for breach of contract, which, it is claimed, was established by the exchange of the following telegrams between the defendant in Los Angeles, Cal., and Mrs. Beaumont Packard, the manager of a theatrical agency in New York:

"Los Angeles, Calif., June 24, 1909.

"Mrs. Beaumont Packard, 1416 Bway. Offer Sheldon Lewis one hundred ten a week regular engagement commencing first week July. Answer.
"John H. Blackwood."

"June 24, '09.

"John H. Blackwood, Belasco Theater, Los Angeles, Cal. Lewis compromised for September first. Will come until that time. May arrange later to stay. Answer.                          Mrs. B. Packard."

"Los Angeles, Cal., June 24, 1909.

"Mrs. Beaumont Packard, 1416 Bway, N. Y. Cannot consider Lewis or any one else summer only wire his definite decision have another in view.
"John H. Blackwood."

"Los Angeles, Calif., June 25, '09.

"Mrs. Beaumont Packard, 1416 N. Y. C. 12:30 a. m. Lewis all right one hundred until September one twenty-five after September report rehearsals July twelve express quick all possible photos newspaper and lobby confirm this by wire.                          John H. Blackwood."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"June 26, '09.

"John H. Blackwood, Belasco Theater, Los Angeles, Cal. Lewis accepts hundred until September first hundred twenty-five after. Will report July twelve. Send transportation before July second.          Mrs. B. Packard."

The defendant applied to Mrs. Packard, as he admits he had been in the habit of doing for several years, when he desired actors. Pursuant to those telegrams, the plaintiff went to Los Angeles, and on July 19th commenced playing at the theater of which the defendant was manager, and continued for 7 weeks, at the end of which time he was discharged, as far as appears, without cause. While a number of reasons are urged by the respondent to support the dismissal of the complaint at the close of the plaintiff's evidence, only two require discussion.

[1] Whether the telegrams made out a contract for a definite term depended on the meaning of the words "regular engagement" in the first telegram. The evidence of the plaintiff tends to show that those words had a definite meaning in the theatrical business, and that as applied to an engagement in a theater like the defendant's, which ran throughout the year, meant an engagement for 52 weeks. The telegrams themselves furnish internal evidence to show that the engagement contemplated by the defendant was at least for some definite period extending beyond the summer. We think the case was one which justified proof of the meaning of the words "regular engagement," as used by the defendant, and that, as explained by the plaintiff's evidence, the telegrams were sufficient to make out a contract for a definite term of 52 weeks.

[2] The defendant pleaded, in effect, that at the time of the contract he was to the knowledge of the plaintiff acting as general manager of the Blackwood-Belasco Company, a corporation, and that the plaintiff was employed by said company, through the defendant as agent. The defendant was allowed to offer certain evidence, during the presentation of the plaintiff's side of the case, bearing upon the claim that he was acting as agent for a disclosed principal. It would be sufficient to show the error of the court on this branch of the case to state that, when the complaint was dismissed, it had not been proved that there was in fact any such company or corporation as the Blackwood-Belasco Company. But, assuming that that had been proved, and that it appeared that the defendant was acting as agent for it in employing the plaintiff, there is no evidence whatever that the plaintiff knew that fact. The telegrams were sent by the defendant in his own name, and, to show knowledge on the part of the plaintiff, he relies upon a letter written to Mrs. Packard six months before on an entirely different matter. Assuming that that letter was sufficient to show knowledge on the part of Mrs. Packard, that knowledge was not chargeable to the plaintiff. In the first place, the knowledge did not come to Mrs. Packard in the course of her employment, or even at a time when she was acting as agent for the plaintiff. Moreover, the evidence shows that she was a mere go-between, an agent of both parties. She was the defendant's agent to communicate his offer to the plaintiff, and she was the latter's agent to communicate

his acceptance to the defendant. Anything she may have learned at a different time, and wholly unconnected with her agency for the plaintiff, was not chargeable to him. The evidence, showing any knowledge acquired by the plaintiff after the contract of employment was made, could not have the effect of changing the contract.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.